ROLLING WAVE, The (COHAN v.). See Case No. 2,959a.

ROLLINS (HAMILTON v.). See Case No. 5,-988.

ROLLINS (MASON v.). See Case No. 9,252.

---

## Case No. 12,027.

ROLLINS v. TWITCHELL et al.

[2 Hask. 66;[1] 5 Am. Law Rec. 247; 14 N. B. R. 201.]

District Court, D. Maine. Feb., 1876.

BANKRUPTCY—SET OFF—EQUAL EQUITY.

1. A non-negotiable demand against a bankrupt, purchased by his debtor before bankruptcy proceedings, but after his insolvency, cannot be set off either at law or in equity by the debtor against his negotiable note payable to the bankrupt and held by his assignee, when the assets are insufficient to pay the bankrupt's liabilities in full.

2. Where there is equal equity, the law must prevail; and equality is equity.

Assumpsit [by Franklin J. Rollins, assignee, against John I. Twitchell and others] upon a promissory note signed by the defendants payable to the bankrupt. The defendants pleaded in set off a non-negotiable demand against the bankrupt that they had purchased from

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

20 FED.CAS.—72

other creditors before bankruptcy proceedings were commenced, but after the bankrupt had become insolvent. The cause was submitted to the presiding justice without a jury upon stipulation of the parties that the set off should be allowed if permitted either by law or in equity.

Moses M. Butler, for respondent.
William L. Pu'nam, for defendants.

FOX, District Judge. The bankrupt was formerly a banker in this place under the style of the Bank of Portland. His assignee has brought this action to recover from the defendants the balance remaining unpaid on their note for $5,000 dated Feb. 11, 1875, payable in four months to M. B. Clements. This note was discounted at the Bank of Portland, and at its maturity, was held by the Everett Nat. Bank of Boston, it having been pledged by Goold to that bank with other notes as collateral security for his indebtment to that bank. On the fourth day of May, it was generally known in Portland that Goold had failed and the Bank of Portland had closed. On the fifth of May, the defendants knowing of Goold's failure purchased of C. J. Pennell. his claim as a depositor in the Bank of Portland, for the sum of $1,068.18, and on the eighth of May they also purchased from John L. Best a portion of the amount of his deposit in the Bank of Portland, viz., the sum of $1,000. They received written transfers and assignments of these claims, and on the 24th of May, Goold in writing acknowledged notice of these transfers, assented thereto, and that the above amounts were due from him to the defendants.

A petition in bankruptcy was filed against Goold May 27th; the act of bankruptcy upon which the adjudication was made took place May 13th. These claims were purchased by the defendants at a considerable discount, as a speculation, with no intent at that time to claim them as a set off to their note, as they both testify, and the court has no reason to discredit their statement in this behalf. Their note, with others, was subsequently turned over by the Everett Bank to the assignee, the Everett having collected sufficient to discharge its claims against the Bank of Portland. The defendants now file in set off these claims, purchased of Pennell and Best, they having paid to the Everett Bank, at the maturity of the note, all but the amount of these claims. The parties have submitted the case to the determination of the court under a stipulation that the court may allow the set off of these demands if the defendants could avail themselves of them by any proceedings in equity.

Section 5073, Rev. St., as amended by act of 1874 [18 Stat. 179], provides, that in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set off against

the other and the balance only shall be allowed or paid, but no set off shall be allowed in favor of any debts to the bankrupt of a claim in its nature not provable against the estate, or of a claim purchased by or transferred to him after the filing of the petition, or in cases of compulsory bankruptcy, after the act of bankruptcy upon or in respect of which the adjudication shall be made, and with a view of making such set off.

It is frankly admitted that the assent of Goold to the transfer of these claims made by him on the 24th of May did not confer any greater or better rights on the defendants than they then enjoyed. What was done at that time was after the creditors had determined to put Goold into bankruptcy; and any benefits or advantages acquired at that time would clearly be in fraud of the bankrupt law, would be in aid of and to perfect and accomplish a fraudulent preference within the meaning of the act; and in my view, the rights of the parties must be determined as though nothing had been done on that day; and the defendants are remitted to the rights they acquired at the time they purchased these claims from Pennell and Best.

The original contract relative to these deposits was between Goold and Pennell and Best; the promise and agreement of Goold was made to them, and he did not in any way incur any other legal liability, there being no legal debt or credit on these claims between any other parties. It was not in the power of these depositors by an assignment of their claims to change the existing relations and substitute other persons as his creditors without the express sanction of Goold. The relation of debtor and creditor arises from contract between the parties, and a contract cannot arise excepting from mutual agreements.

These claims were merely choses in action, not negotiable, upon which, in this state, an action at law could not be maintained by an assignee excepting in the name of the original creditor. The assignment of a chose in action conveys merely the rights, which the assignor then possesses to such thing; and these demands of Pennell and Best, by their transfer to the defendants, in my opinion, did not become mutual debts or credits in their hands against Goold, so as to become matter of set off within the terms of this section of the bankrupt act. To constitute mutual demands within the meaning of the act, they should be due to and from the same persons in the same capacity. Dale v. Cooke. 4 Johns. Ch. 11; Murray v. Toland, 3 Johns. Ch. 569. In Deac. Bankr. 900, it is said: "In order to establish a clear right of set off, it is essential that the debt claimed to be due to either party, or the credit given, should be due to, or given by him in his own right and not in the right of another person; for though the statute is intended to give a certain extension to the right of set off at law, yet it does not take away the necessity of what was before required in these cases, viz., a strict mutuality."

When the subject matter of the transfer is negotiable paper, it may be that such a claim in the hands of an endorser might constitute a mutual demand which could be used in set off, for there is the express positive promise of the maker to pay the same to the legal holder thereof, and an action could be sustained in his own name against the maker to enforce its collection; and the same rule perhaps may apply to choses in action in those states where an assignee can sustain an action for their recovery in his own name under the modifications of the common law; but in this state, where a legal title to the chose in action is not acquired by the assignee on its assignment to him, where his only remedy for its collection must be in the name of the assignor, where all that is acquired in such a case by the assignee is the beneficial interest in the claim, an equitable right to avail himself of it and to compel his assignor to permit the use of his name to accomplish this object, it does not constitute in law a mutual claim or credit between the bankrupt and assignee of the claim within the meaning of the bankrupt law.

The statute in terms forbids a set off of any claims purchased by or transferred to the debtor after the filing of the petition, or in case of involuntary bankruptcy, after the act of bankruptcy. Such a provision was requisite to reach those cases where the assignee of the claim could sustain an action for its recovery in his own name, but would be unnecessary in those states where the remedy was governed by the rules of the common law.

The only interest in these claims which the defendants acquired by their purchase was an equitable one, the beneficial right to the amount when collected by or through the original creditors. Their right of set off, therefore, does not arise from the express provisions of the bankrupt act in the matter of set off, but from the rules governing courts of equity in this behalf. Their set off is of an equitable and not of a legal nature, and must depend for its enforcement on the principles of law as administered by courts of equity.

Under ordinary circumstances, it may be conceded that a court of equity would acknowledge and enforce the right of the defendants to the set off of these claims. It would find no difficulty in so dealing with them from the strict legal objection which would arise against any remedy by the defendants at law for their collection, and it would recognize the beneficial interest of the defendants in these claims, which Goold could be compelled to pay to them by a proper action for their benefit at the same time that he received from them the amount due upon their note, and to avoid circuity of action, would permit one claim to be applied

to the satisfaction and discharge of the other, as thereby justice would be done and no one could be injured.

All that Pennell and Best could claim on account of these demands was their payment by Goold, and in case of his bankruptcy an equal proportion with his other creditors of his assets. By their purchase of these claims the defendants could not acquire any greater or better rights than their assignors possessed, and such rights a court of equity will sanction and protect to their fullest extent; but these defendants through their purchase of these claims now insist that they have acquired much greater rights than their assignors then had, to wit, a right to the full payment of them when their assignors could only have received a pro rata proportion of Goold's estate with the other creditors.

The defendants appeal for relief to the equity side of the court and must abide by the rules which a court of equity adopts in determining the rights of litigants. Among the maxims which are constantly recognized by a court of equity, we find that "where there is equal equity, the law must prevail;" and also that "equality is equity;" and these principles, as it appears to the court, must effectually extinguish any rights of the defendants to the allowance of these choses in action as a set off to their legal liabilities in this suit. They would be entitled to the full amount of these claims and their allowance as claimed, if Goold's estate was sufficient to discharge all his indebtedness.

But it is manifest that the creditors will receive but a small dividend, and therefore if the defendants are allowed the benefit of them in set off, the assets of Goold will be diminished to the extent of the set off, and will reduce the dividend to the other creditors who will thus be deprived of their fair proportion of the claim due from these defendants to the bankrupt's estate. These creditors were original depositors of Goold and dealt with him relying on his assets in payment of their claims, every one of which is clothed with as high an equity as these which have been acquired by the defendants after they were fully aware of Goold's insolvency; and it is quite evident that the demand of these defendants to have their set off allowed under the circumstances of the present case, and thereby to permit them to recover every dollar of these claims purchased by them at a discount, is entirely devoid of right and justice. Such a payment to one creditor of his entire claim, thereby diminishing pro tanto the amount to be received by the other creditors, strikes at the very foundation of the rule that equality is equity, and is also in conflict with the spirit of the bankrupt act, which demands an equal distribution of the estate of the bankrupt among all his creditors. Where there is equal equity the law must prevail, is a complete answer to the defendants' appeal from the rules of law to those of equity, as in no respect have they any reason to demand payment of their claims before any other of the depositors.

The defendants rely on the case of Clark v. Cort, 1 Craig & P. 154. The claim there was a legal claim, a debt due to the plaintiffs which they insisted should be set off against a demand they held by assignment from their predecessors in business, and which was secured to their assignors by a mortgage of real estate; the plaintiff brought this action to have the accounts adjusted and this legal demand which they owed to the creditor applied in set off to the equitable demand they held against the creditor, and it was allowed by Lord Chancellor Cottenham. He says: "The plaintiffs had a demand against Groocock before he became a bankrupt, in respect of which they are entitled to sue in this court; they therefore, in this court, are entitled to set off the legal debt which they owe to Groocock." It seems to the court, that case depended on the debt being a legal one between the parties, which had been contracted after they had obtained the assignment of the other demand, and the right of set off was inherent in it on that account. It may be said than an assignee in bankruptcy, excepting in cases of fraud, takes only such rights and interests as the bankrupt himself had and could himself claim and assert at the time of bankruptcy, and that they are affected with all the equities which would affect the bankrupt himself if he were asserting these rights and interests.

Such is the principle recognized in Mitchell v. Winslow [Case No. 9,673], and since adopted by many other courts; but the exception recognized in this rule, that if a transaction is affected by fraud or would result in a fraud upon the law or rights of creditors, the assignee in such case will acquire greater rights than the bankrupt had, and for the benefit of the general creditors, may impeach and set aside the transaction, withdraws the present case from the operation of this general principle and confers on the assignee the right to resist the set off now claimed, for the manifest reason, that if sanctioned it would accomplish a fraud upon the other creditors. These defendants at the time of their purchase of these demands had no other motive or purpose than to share pro rata in the estate of Goold, and take the proportion which as purchasers of these claims they would be fairly and justly entitled to on a division with all other creditors. This was what they expected, and being just and right, the court will protect their interests to that extent.

By their subsequent conduct, at a time when proceedings in bankruptcy were about to be instituted, in obtaining Goold's assent to the transfer of these claims with his agreement to become accountable to them

instead of Pennell and Best, and by their now claiming to be paid the full amount of these demands, they are endeavoring to essentially change the condition of things, and to obtain an undue proportion of the assets of the bankrupt, and thereby a preference over other creditors, to which, by reason of the purchase of these demands, they have neither legal nor equitable ·rights.

As was held in Smith v. Hill, 8 Gray, 572, a case identical with the present, arising under the insolvent act of Massachusetts, to allow the set off would interfere with the proper distribution of the estate of the bankrupt, and would be contrary to the spirit of the bankrupt law. It "would not be consonant with equity or justice to the parties interested."

The question now presented was before the circuit court of Illinois (Judges Drummond and Blodgett) in Hitchcock v. Rollo [Case No. 6,536], and in an elaborate opinion by Drummond, J., the set off was disallowed.

I am aware that in California and in the Southern district of Ohio the district judges have not concurred in this view; but in my opinion the ruling of the circuit court of Illinois should be adopted, as it is more in accordance with equity and justice and the purposes of the bankrupt law.

The case of Gray v. Rollo, 18 Wall. [85 U. S.] 629, affords no aid in the determination of the question, nor do any of the other decisions of the supreme court of the United States to which my attention has been called. ·

Judgment for plaintiff.   .

NOTE [from original report in 14 N. B. R. 201]. Since this opinion was announced, Mr. Justice Shipley, in the circuit court of Massachusetts, in Mattocks v. Levering [Case No. 9,299], proved and adopted the decision of the circuit court of Illinois in Hitchcock v. Rollo [supra].

———

ROLLINSON (UNITED STATES v.).   See Case No. 16,191.

ROLLO (DRAKE v.).   See Case No. 4,066.

ROLLO (HITCHCOCK v.).   See Cases Nos. · 6,535 and 6,536.

ROLLSTONE MACH. WORKS (WHITNEY v.).   See Case No. 17,596.